**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PICTIVA DISPLAYS INTERNATIONAL LTD., KEY PATENT INNOVATIONS LIMITED** | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:26-cv-433 |
| v. | ) ) | **JURY TRIAL DEMANDED** |
| **SAMSUNG DISPLAY CO., LTD., SAMSUNG ELECTRONICS CO., LTD., SAMSUNG ELECTRONICS AMERICA, INC.** | ) ) ) ) ) | |
| Defendants. | ) ) ) ) | |

**COMPLAINT FOR PATENT INFRINGEMENT**

1.      Plaintiffs Pictiva Displays International Ltd. ("Pictiva") and Key Patent Innovations Limited ("Key Patent") (collectively, "Plaintiffs"), by and through their undersigned counsel, bring this action against Samsung Display Co., Ltd. ("SDC"), Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Samsung" or "Defendants") to prevent the Defendants' continued use of the asserted patent without authorization and to receive an injunction and recover damages resulting from such unauthorized use.

I.      **THE PARTIES**

2.      Plaintiff Pictiva is a corporation organized and existing under the laws of Ireland, with its principal place of business at The Glasshouses GH2, 92 Georges Street Lower, Dun

Laoghaire, Dublin, Ireland A96 VR66. It operated under the name of Dolya Holdco 5 Limited until July 17, 2020.

3.    Pictiva is the assignee of all right, title, and interest in U.S. Patent No. 8,314,547 (the "'547 Patent," Ex. 1).

4.    Plaintiff Key Patent is the beneficiary of a trust pursuant to which Pictiva owns, holds, and asserts the '547 Patent. Key Patent is an Irish entity duly organized and existing under the laws of the Republic of Ireland. The address of the registered office of Key Patent is: The Glasshouses GH2, 92 Georges Street Lower, Dun Laoghaire, Dublin A96 VR66, Ireland.

5.    On information and belief, Defendant SEC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 129, Samsung-ro, Yeongtong-gu, Suwon, Gyeonggi-do, 16677, Republic of Korea. On information and belief, SEC is the worldwide parent corporation for SEA and SDC. On information and belief, SEC designs, manufactures, uses, offers for sale, sells, and/or imports into the United States a range of digital consumer electronics, including devices containing quantum dot organic light-emitting diode ("QD-OLED") display panels supplied by SDC, such as televisions and monitors. On information and belief, SEC is also involved in the design, manufacture, and provision of products sold by SEA.

6.    On information and belief, Defendant SEA is a corporation organized and existing under the laws of the State of New York. On information and belief, SEA is a wholly owned subsidiary of SEC. On information and belief, SEA, collectively with SEC and SDC, designs, manufactures, uses, offers for sale, sells, and/or imports into the United States a range of digital consumer electronics, including devices containing QD-OLED display panels supplied by SDC, such as televisions and monitors. Defendant SEA maintains offices and facilities at 6625

Excellence Way, Plano, Texas 75023. SEA may be served with process through its registered agent for service in Texas: C T Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

7.     On information and belief, Defendant SDC is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business at 1 Samsung-ro, Giheung-gu, Yongin-si, Gyeonggi-do, 17113, Republic of Korea. On information and belief, SEC is SDC's parent company. On information and belief, SDC designs and manufactures a range of displays for digital consumer electronics, including QD-OLED display panels. On information and belief, SDC markets and sells its QD-OLED display panels to television and monitor manufacturers including, but not limited to, SEC, SEA, Sony, Dell, MSI, AOC, Gigabyte, and many others (hereinafter, the "SDC Customers"). On information and belief, SDC makes, imports, sells, and offers to sell and/or partners with the SDC Customers to operate as a unitary business venture to manufacture, import, offer to sell, and/or sell consumer products with QD-OLED display panels in the United States, including within this District. On information and belief, SDC places the QD-OLED display panels into the stream of commerce through their established distribution channels, with the knowledge and expectation that devices incorporating those panels will be sold to end users in the United States, including in this District. For example, the SDC Customers are part of SDC's established distribution channels through which products with SDC's QD-OLED display panels are sold and offered for sale to customers in the United States, including in this District, through both brick-and-mortar retail locations and online sales platforms accessible in this District. These distribution channels are intended to, and do in fact, distribute consumer products such as televisions and monitors with SDC's QD-OLED panels to customers in this District in the ordinary course of commerce.

## II.      JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq.*, including 35 U.S.C. § 271.

9.      Each Defendant is subject to this Court's personal jurisdiction consistent with the principles of due process and/or the Texas Long Arm Statute. Tex. Civ. Prac. & Rem. Code §§ 17.041, *et seq.* This Court has personal jurisdiction over each Defendant in this action because, among other reasons, each Defendant has committed infringing acts within the Eastern District of Texas giving rise to this action and have established minimum contacts with the forum state of Texas. Each Defendant conducts business in this District and maintains a regular and established places of business within this District.

10.      Further, this Court has personal jurisdiction over each Defendant because each Defendant has sufficient minimum contacts and/or has engaged in substantial, continuous, and systematic activities with the State of Texas and with the Eastern District of Texas. For example, Defendant SEA has a regular and established place of business in the State of Texas and in this judicial district, and maintains facilities and employees within Texas and within this judicial district. Personal jurisdiction also exists over each Defendant because each directly or indirectly makes, uses, sells, offers for sale, imports, advertises, makes available, and/or markets QD-OLED displays or consumer products containing QD-OLED displays within the State of Texas and the Eastern District of Texas that infringe one or more claims of the Patent-in-Suit, and has committed acts of infringement and/or contributed to or induced acts of infringement by others in this judicial district and elsewhere in Texas. Further, Defendants have each placed or contributed to placing infringing products into the stream of commerce, knowing or understanding that such products would be sold and used in the United States, including in this judicial district. Additionally,

Defendant SEA is registered to do business in Texas and maintains an agent authorized to receive service of process within Texas. SEC and SDC further authorize sales of and services for the Accused Products in this judicial district. For example, on information and belief, Defendants authorize sales at Best Buy, Costco, Walmart, and others located in this judicial district. SEC further maintains authorized service centers in this judicial district, including at, for example, 3580 Preston Rd #100, Frisco, Texas 75034.

11.    In addition, SDC has established minimum contacts with both the United States and Texas such that subjecting SDC to personal jurisdiction in this District will not offend traditional notions of fair play and substantial justice. For example, on information and belief, SDC imports, sells and offers to sell the Accused Products throughout the United States, Texas and this District, through major electronics retailers (including Best Buy and Walmart) and authorized service centers in North America, and/or in concert and partnership with other third parties who import, sell or offer to sell products, such as, without limitation, finished or end consumer electronics products, systems and devices that use or incorporate the infringing QD-OLED displays.  For example, according to its website, SDC operates several "sales network" offices in the United States, including in Austin, Houston, Seattle, San Jose, and San Diego in order to sell, offer to sell, or distribute the infringing QD-OLED displays for incorporation into finished or end consumer electronics products that are sold or offered for sale within, or imported into, the United States and in this District.

12.    On information and belief, SDC conducts a significant amount of business in Texas and this District through online sales and advertisements directly to consumers, through product sales by SDC's distributors and resellers, and in concert and partnership with third parties.

13.     Additionally, personal jurisdiction over SDC comports with due process. SDC has conducted and regularly conducts business within the United States and this District. SDC has purposefully availed itself of the privileges of conducting business in the United States, and more specifically in the State of Texas and this District. SDC has sought protection and benefit from the laws of the State of Texas by making the infringing QD-OLED displays with the awareness and/or intent that they will be purchased and used by, or sold to, consumers; or incorporated for use, sale, offer for sale or imported in or into this District. Having purposefully availed itself of the privilege of conducting business within this District, SDC should reasonably and fairly anticipate being brought into court here.

14.     As another example, SDC has further availed itself of the laws and protections of the United States and Texas by knowingly supplying, or contracting to supply, the infringing QD-OLED displays to be incorporated into televisions and monitors and sold, offered for sale, imported, and/or used in the United States, Texas, and this District.

15.     In addition, SDC has purposely availed itself of the laws and protections of the United States and Texas by filing multiple civil actions for purported patent infringement relating to OLED displays in this same District. *See, e.g.*, *Samsung Display Co., Ltd. v. BOE Technology Group Co., Ltd., et al.*, 2:25-cv-00412 (E.D. Tex. Apr. 17, 2025); *Samsung Display Co., Ltd. v. BOE Technology Group Co., Ltd., et al.*, 2:25-cv-00426 (E.D. Tex. Apr. 21, 2025); *Samsung Display Co., Ltd. v. BOE Technology Group Co., LTD., et al.*, 2:25-cv-00430 (E.D. Tex. Apr. 23, 2025); and *Samsung Display Co., Ltd. v. BOE Technology Group Co., LTD., et al*. 2:23-cv-00309 (E.D. Tex. Jun. 26, 2023).

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(d) and/or 1400(b). For example, SEA has a regular and established place of business in this district and has

committed acts of infringement in this district. Additionally, SEC and SDC are foreign defendants for whom venue is proper in any district in which it is subject to personal jurisdiction. As noted above, SEC and SDC have regularly conducted business in this District and are subject to personal jurisdiction in this District; and certain acts complained of herein occurred in this District.

## III.   FACTUAL ALLEGATIONS

17.     The '547 Patent is entitled "Opto-Electronic Component." The '547 Patent was filed as Application No. 12/679,138 on March 19, 2010, issued as a patent on November 20, 2012, and claims priority to, among others, PCT Application No. PCT/DE2008/001302, filed on August 4, 2008, which in turn claims priority to German Application No. 102007044597, filed on September 19, 2007. A true and correct copy of the '547 Patent is attached as Exhibit 1.

18.     The '547 Patent names Markus Klein, Norwin Von Malm, and Benjamin Claus Krummacher as co-inventors.

19.     The '547 Patent has been in full force and effect since its issuance. Plaintiffs own by assignment the entire right, title, and interest in and to the '547 Patent, including the right to seek damages for past, current, and future infringement thereof.

20.     The '547 Patent relates to, among other things, novel and fundamental aspects of QD-OLED display technologies. The '547 Patent relates to an optoelectronic device that emits electromagnetic radiation having a first wavelength spectrum during operation and that includes a structured layer. By way of example, the '547 Patent recites a novel optoelectronic device that includes "a structured layer," which in turn includes "first and second regions" and is disposed "in the beam path of [an] electromagnetic radiation emitted by [an] organic layer sequence." Ex. 1, at 14:55-62. The first and second regions "are arranged laterally in a beam path of the optoelectronic device," wherein the first regions "each include a wavelength conversion layer" for converting light in the first wavelength spectrum to that "having a second wavelength spectrum," and the

second regions "each include a filter layer," transparent to light in the first wavelength spectrum. *Id.* at 14:63-15:10.

21.     The patented invention resulted from years of research and development by OSRAM, including OSRAM Opto Semiconductors GmbH, a technology pioneer in the OLED field. OSRAM "embark[ed] on large scale research in the early 1990s, establishing state-of-the-art OLED design and manufacturing operations."[1] OSRAM manufactured and sold OLED display modules under the Pictiva brand name in the early 2000s.[2] OSRAM had some of the most advanced OLED displays in the early 2000s, including offering full-color OLED displays.

22.     OSRAM's innovations in optical solutions have resulted in hundreds of patents covering OLED technologies.[3] Today, Plaintiff Pictiva is responsible for protecting and licensing OSRAM's seminal innovations in the OLED display field.[4]

23.     SDC has had actual knowledge of the '547 Patent since no later than September 21, 2016, at which time it submitted an Information Disclosure Statement to the USPTO citing the

---

[1] https://www.pictivadisplaysinternational.ie/ (last visited May 26, 2024); *see also* https://web.archive.org/web/20240414072910/https://ams-osram.com/about-us/history ("1997: First patents for OLED technology"; "2005: First commercial luminaire with OLED modules by OSRAM").

[2] *E.g.*, Ron Mertens, *OSRAM Expands Display Product Line with New OLED "Pictiva,"* OLED-INFO (July 15, 2004), https://www.oled-info.com/oled_display_modules/osram_expands_display_product_line_with_new_oled_pictiva (reporting OARAM Opto Semiconductors' announcement of a new Pictiva OLED display).

[3] Key Patent Innovations, *Key Patent Innovations' Subsidiary Pictiva Display International Acquires Portfolio of OLED Patents from OSRAM*, CISION (Oct. 13, 2020), https://www.newswire.ca/news-releases/key-patent-innovations-subsidiary-pictiva-display-international-acquires-portfolio-of-oled-patents-from-osram-836552575.html.

[4] https://www.pictivadisplaysinternational.ie/ ("Pictiva is focused on licensing these pioneering inventions to established players and new entrants in the OLED display market.") (last visited May 26, 2024).

'547 patent pursuant to 37 C.F.R. §§ 1.56, 1.97, 1.98 in connection with its own pending patent application related to OLED technology, which subsequently issued as U.S. Patent No. 9,267,651.

24.    SDC, SEC, and SEA have had actual knowledge that products incorporating SDC's QD-OLED displays infringe the '547 Patent since at least 2023. Indeed, in October 2023, Pictiva filed a complaint against SEA and SEC alleging infringement of the '547 Patent by "various S95 televisions and other infringing consumer electronic products that include similar structure and functionality." *Pictiva Displays International Ltd. v. Samsung Electronics Co., Ltd., Samsung Electronics America, Inc.*, Civil Action NO. 2:23-cv-00495-JRG ("*Pictiva I*"), Dkt. 1. At the time of the Complaint, SEC and SEA had released two versions of the S95—i.e., S95B and S95C. These televisions contained QD-OLED panels supplied by SDC.

25.    The claims adjudicated in *Pictiva I* addressed QD-OLED products released by SEA and SEC prior to 2025. For example, Pictiva served infringement contentions identifying the following accused products as to the '547 Patent: "S95B, S95C, S90C, Odyssey OLED G9 (G95SC), Odyssey OLED G8, Odyssey OLED G6, Odyssey G85SB, Odyssey G65B, Odyssey G93SC, Odyssey CRG9, QE1C, Q80C, 170C, Q60C, LST7T, Q8DA, QN90A, QN900C, QN800C, QN900B, QN800B, QN90C, QN85C, QN95B, QN90B, QN85B, QP75A-8K, QP85A-8K, QE1D, LS03D, Q80D, Q70D, Q60D, QN900D, QN800D, QD90D, QN85D, Q80D." (*Pictiva I* Accused Products").[5] Each of these products was first released prior to 2025.

26.    During the pendency of *Pictiva I*, SEA and SEC refused to provide any discovery or information regarding QD-OLED products other than the *Pictiva I* Accused Products on the grounds that they were not accused products and not within the scope of the claims brought by

---

[5] Pictiva dropped the QLED products included in this list after confirming that they did not include OLEDs.

Plaintiffs in that case. For example, SEA and SEC stated to the Court: "Plaintiff did not accuse products sold before August 2019, or newly released 2025 models" and it therefore "did not produce information about them." *Pictiva I*, Dkt. 220 at 5.

27.     On information and belief, SEA and SEC have released next generation QD-OLED televisions and monitors which were not before the Court or jury in *Pictiva I*. With respect to SEC and SEA products, this action addresses Plaintiffs' claims of infringement regarding QD-OLED televisions and monitors sold under model numbers released after Plaintiffs provided their infringement contentions and which were not resolved by *Pictiva I*. Such products are referred to in this Complaint as "New SEC/SEA Accused Products."

28.     On information and belief, SDC sells its QD-OLED display panels to SDC Customers other than SEC and SEA. For example, on information and belief, SDC sells QD-OLED display panels to Dell Technologies Inc., and Dell Products L.P. (collectively, "Dell"), which are then incorporated into various Dell monitors that Dell imports and sells in the United States, including, but not limited to, certain Alienware monitors such as AW3423DW, AW3423DWF, AW3424DWF, AW3225QF, AW3425DW, AW2725DF, AW2725D, and AW2725Q; Dell Plus S3225QC; and Dell UltraSharp U3226Q. As another example, on information and belief, SDC sells QD-OLED display panels to Micro-Star International Co. Ltd and MSI Computer Corp. (collectively "MSI"), which are then incorporated into various monitors that MSI imports and sells in the United States, including, but not limited to, MSI's QD-OLED monitors such as MAG 271QP, MAG 271QPX, MAG 272UP, MAG 272QP, MAG 272QPW, MAG 273QP X24, MAG 274QP, MAG 321CUP, MAG 321UP, MAG 321UPX, MAG 341CQP, MEG 342C, MPG 271QR X50, MPG 271QRX, MPG 272URX, MPG 321URX, MPG 321URXW, MPG 321CURX, MPG 322URX, MPG 341C, MPG 341CQPX, MPG 341CQR X36, MPG 491CQP, and MPG 491CQPX.

As another example, on information and belief, SDC sells QD-OLED display panels to Sony Group Corp., Sony Corporation of America and/or Sony Electronics, Inc. (collectively "Sony"), which are then incorporated into various televisions that Sony imports and sells in the United States, including, but not limited to, certain Sony BRAVIA televisions such as BRAVIA 8 II 55"/66" Class QD-OLED 4K HDR Google TV, BRAVIA XR 55"/65" Class A95K 4K HDR OLED TV with Google TV (2022), and BRAVIA XR 55"/65"/77" Class A95L QD-OLED 4K HDR Google TV. The products identified in this paragraph, as well as any other SDC Customer products incorporating QD-OLED display panels supplied by SDC that are imported into and sold in the United States and which were not resolved by *Pictiva I* are referred to in this Complaint as "SDC Customer Accused Products."

29.     SDC was not named as a defendant in *Pictiva I*, nor did it seek to join the case. Upon information and belief, SEC and SEA sought indemnification from SDC regarding Plaintiffs' claims for infringement of the '547 Patent.

30.     On May 7, 2024, SDC filed a Petition for *Inter Partes* Review ("IPR") of the '547 Patent. *See* IPR2024-00855. On November 19, 2024, the United States Patent Trial and Appeal Board issued a Decision denying institution of IPR. IPR2024-00855, Paper 12.

31.     On April 21, 2025, SDC attempted to challenge the validity of the '547 Patent before the United States Patent and Trademark Office for a second time by filing a Petition for *Ex Parte* reexamination ("EPR") of the '547 Patent. On February 19, 2026, the USPTO issued the reexamination certificate, confirming all challenged claims.

32.     In October 2025, a jury found that the '547 Patent was valid and infringed by SEC and SEA through the sale of the *Pictiva I* Accused Products. The jury awarded Plaintiffs $98.8 million in damages for infringement related to the *Pictiva I* Accused Products. *Pictiva I*, Dkt. 577.

33.     On February 17, 2026, SDC attempted to challenge the validity of the '547 Patent a fourth time by filing a second (defective) request for EPR before the United States Patent and Trademark Office. On May 15, 2026, the Central Reexamination Unit denied SDC's request for reexamination, noting the overlap between SDC's latest request for reexamination and its prior post-grant challenges:

### Determination

Requester is the same challenger as in the prior *ex parte* reexamination (Control No. 90/019,921) and the prior *inter partes* review (IPR2024-00855). The current Request includes at least some of the same prior art or arguments previously presented to and evaluated on the merits by the Office in addition to art and arguments added to address deficiencies in the prior post-grant challenges.

After considering the record, and in view of all relevant considerations, the request for reexamination is denied under 35 U.S.C. § 325(d).

Exhibit 3 at 5.

34.     Despite being aware that monitors and televisions incorporating SDC's next generation QD-OLED display panels infringe the '547 Patent, SEA, SEC, and SDC continue to make, use, sell, offer for sale, and/or import into the United States the New SEC/SEA Accused Products. SEA, SEC, and SDC actions constitute infringement under 35 U.S.C. §§ 271(a).

35.     Despite being aware that monitors and televisions incorporating SDC's QD-OLED display panels infringe the '547 Patent, SDC continues to induce its customers to make, use, sell, offer for sale and/or import into the United States the SDC Customer Accused Products. Despite having received notice that it was and is infringing the '547 Patent, SDC remained willfully blind to the risk of infringement by its customers, partners, dealers, representatives, and agents, despite believing there to be a high probability of infringement due to its instructions and inducement, in violation of 35 U.S.C. § 271(b).

36.     After having received notice that it was and is infringing the '547 Patent, SDC continued to advertise the infringing features, distribute the SDC Customer Accused Products, offer technical assistance, provide literature featuring QD-OLED displays to customers, dealers and partners, and advise them to import, offer to sell, sell, or use the SDC Customer Accused Products in a manner that directly infringed the '547 Patent, in violation of 35 U.S.C. § 271(b).

37.     Despite being aware that consumer electronic products incorporating SDC's QD-OLED display panels infringe the '547 Patent, SDC has offered to sell, sold, or imported either directly or indirectly QD-OLED display panels that are especially made or adapted for use in an infringement of the '547 Patent by New SEC/SEA Accused Products and/or SDC Customer Accused Products and which do not have a substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

## IV.     FIRST CLAIM FOR RELIEF – INFRINGEMENT OF THE '547 PATENT

38.     Plaintiffs re-allege and incorporate by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

39.     The '547 Patent has been in full force and effect since its issuance. Plaintiffs own by assignment the entire right, title, and interest in and to the '547 Patent, including the right to seek damages for past, current, and future infringement thereof.

40.     Plaintiffs are informed and believe, and on this basis allege, that Defendants, agents of Defendants, and/or third parties acting under Defendants' direction and control, have committed and continue to commit acts of direct infringement of the '547 Patent literally and/or under the doctrine of equivalents by, among other things, making, using, selling, offering to sell, and/or importing within this District and elsewhere in the United States, without authority, products that infringe the '547 Patent, including, for example, New SEC/SEA Accused Products and SDC Customer Accused Products. The New SEC/SEA Accused Products and SDC Customer Accused

Products do not include any *Pictiva I* Accused Products, whether such product was sold before or after the *Pictiva I* verdict.

41.   On information and belief, the New SEC/SEA Accused Products and SDC Customer Accused Products infringe at least one claim of the '547 Patent.

42.   By way of example, a claim chart is attached as Exhibit 2 detailing how SEC and SEA's next generation Penta Tandem QD-OLED products infringe claim 1 of the '547 Patent.

43.   As another example, SDC induces and or contributes to its customers direct infringement of the '547 Patent. For example, SDC induces customers like Dell, MSI, Sony and others to import and/or sell products containing QD-OLED panels supplied by SDC into the United States. Those QD-OLED monitors and televisions contain an OLED panel (i.e., "an optoelectronic device") that includes all of the recited elements of claim 1, including "an organic layer sequence which emits an electromagnetic radiation having a first wavelength spectrum during operation" (e.g., a spectrum corresponding to blue light) and "a structured layer disposed downstream of the organic layer sequence in a beam path of the electromagnetic radiation . . . and including first and second regions" that are "arranged laterally in [the] beam path" as shown in an example below,[6] where the first regions correspond to for example the green (or red) subpixel region and the second regions correspond to at least the blue subpixel regions;

---

[6] https://www.samsungdisplay.com/eng/tech/quantum-dot.jsp#:~:text=QD%2DOLED%2C%20a%20self%2D,emitted%20from%20the%20light%20source.



the "first regions each includ[ing] a wavelength conversion layer [such as the quantum dot conversion layer] configured to convert at least partially electromagnetic radiation having a first wavelength spectrum [such as the blue light emitted by the blue tandems of the blue light emitting source] into an electromagnetic radiation having a second wavelength spectrum [such as the spectrum corresponding to green or red light]" ); and the "second regions each includ[ing] a filter layer [such as a blue filter region, not shown] which is at least partially opaque to an electromagnetic radiation having a third wavelength spectrum [such as green and red light] which corresponds to at least one part of the second wavelength spectrum [such as green or red light]" and that "is transparent to the electromagnetic radiation having the first wavelength spectrum" (e.g., a filter layer transparent to wavelength spectrums corresponding to blue light emitted by the blue tandems of the blue light emitting source but opaque to wavelength spectrums corresponding to at least red or green light) as shown the example above.

44.    Plaintiffs are informed and believe, and on this basis allege, that Defendants have been and currently are infringing the '547 Patent in violation of 35 U.S.C. § 271(a) by making, using, selling, offering for sale and/or importing into the United States the New SEC/SEA Accused Products and SDC Customer Accused Products.

45. Plaintiffs are informed and believe, and on this basis allege, that Defendants have been and currently is inducing infringement of the '547 Patent, in violation of 35 U.S.C. § 271(b), by intentionally aiding and encouraging third parties (including Defendants' vendors, customers, and partners) to make, use, sell, or offer for sale in the United States and/or import into the United States the New SEC/SEA Accused Products and SDC Customer Accused Products, having known that the acts it was causing would infringe or have a high probability of infringing the '547 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '547 Patent.

46. Plaintiffs are informed and believe, and on this basis allege, that Defendants have been and currently is contributing to the infringement of the '547 Patent, in violation of 35 U.S.C. § 271(c), by intentionally aiding and encouraging third parties (including Defendants' vendors, customers, and partners) to make, use, sell, or offer for sale in the United States and/or import into the United States the New SEC/SEA Accused Products, SDC Customer Accused Products, and/or Accused SDC Display Panels, having known that the acts it was causing would infringe or have a high probability of infringing the '547 Patent under 35 U.S.C. § 271(a) and with a specific intent that those performing the acts infringe the '547 Patent.

47. Defendants have had actual knowledge of the '547 Patent since no later than September 2016. Defendants have had actual knowledge of their infringement of the '547 Patent since no later than October 2023. Plaintiffs are further informed, and on this basis allege, that Defendants' infringement of the '547 Patent has been and continues to be deliberate and willful, and, therefore, this is an exceptional case warranting an award of enhanced damages for up to three times the actual damages awarded and attorney's fees to Plaintiffs pursuant to 35 U.S.C. §§ 284-285.

48.     As a result of Defendants' infringement of the '547 Patent, Plaintiffs have been damaged and will continue to be damaged. Plaintiffs are entitled to recover for damages sustained as a result of Samsung's wrongful acts in an amount yet to be determined.

49.     In addition, Defendants' infringing acts and practices have caused and are causing immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law. Plaintiffs are in the business of licensing OLED technology-related patents to companies that develop and commercialize consumer electronic devices incorporating OLED and QD-OLED displays. By using Plaintiffs' patented technologies without a license, Defendants not only deprive Plaintiffs of royalty payments that Plaintiffs would otherwise be entitled to, but also undermine Plaintiffs' business model that depends largely on voluntary licensing of proven technologies.

50.     Plaintiffs' lawsuit has a high likelihood of success on the merits because, as described above, the claims of the '547 Patent have been confirmed by both a jury and the USPTO in multiple post-grant proceedings. Additionally, as demonstrated in Exhibit 2, the New SEC/SEA Accused Products infringe at least one claim of the '547 Patent.

51.     The balance of hardships also weighs in favor of Plaintiffs. Plaintiffs have invested substantial effort and resources in establishing the value of the '547 Patent through both a jury trial and multiple USPTO proceedings instituted by SDC. Plaintiffs' business model depends on voluntary licensing of patents with proven validity and value. Allowing Defendants to continue their efficient infringement strategy would discourage others from taking a voluntary license. Additionally, allowing Defendants to continue their infringement until a jury trial would also effectively under-compensate Plaintiffs for their patented technologies because any jury award reflecting the incremental value of the patented technologies is offset by the large expense in enforcing Plaintiffs' patent rights. In contrast, the New SEC/SEA Accused Products contribute but

a small fraction of SEC/SEA's revenue streams, and SEC/SEA sells TVs incorporating licensed WOLED displays or non-accused QLED displays. Likewise, SDC derives the vast majority of its income from OLED displays for mobile products. Thus, on balance, any hardship that Defendants may suffer does not outweigh the harm Plaintiffs would suffer.

52.     Granting an injunction would also serve the public interest by upholding the integrity of the patent system, which recognizes a patent owner's right to exclude while promoting innovation, investment, and public disclosure of novel technologies. On the other hand, enjoining the sale of the new Penta Tandem QD-OLED displays and end products incorporating such displays will have limited impact on the U.S. public in general because there are alternative TVs and monitors that consumers can procure (albeit of less satisfying display quality).

## V.     DEMAND FOR JURY TRIAL

53.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury on all issued triable to a jury.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor ordering, finding, declaring, and/or awarding Plaintiffs relief as follows:

A.     that each Defendant has infringed the '547 Patent by making, using, selling, and/or importing, either directly or indirectly, the New SEC/SEA Accused Products and SDC Customer Accused Products;

B.     that each Defendant continues to infringe the '547 Patent by making, using, selling, and/or importing, either directly or indirectly, the New SEC/SEA Accused Products and SDC Customer Accused Products;

C.     that each Defendant is enjoined from infringing activities with respect to New SEC/SEA Accused Products and SDC Customer Accused Products;

- 18 -

D.      an award of damages adequate to compensate Plaintiffs for each of Defendants' acts of infringement of the '547 Patent, together with interest and costs in accordance with 35 U.S.C. § 284;

E.      that this is an exceptional case and awarding Plaintiffs the reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

F.      an accounting for acts of infringement and supplemental damages, without limitation, prejudgment and post-judgment interest; and

G.      such other equitable relief which may be requested and to which Plaintiffs are entitled.

Dated: May 26, 2026

Respectfully submitted,

*/s/ Jennifer Truelove*

Jennifer L. Truelove
Texas State Bar No. 24012906
jtruelove@mckoolsmith.com
**MCKOOL SMITH, P.C.**
104 East Houston Street Suite 300
Marshall, TX 75670
Telephone: (903) 923-9000
Facsimile: (903) 923-9099

Jason G. Sheasby (*pro hac vice* to be filed)
jsheasby@irell.com
Annita Zhong, PhD (*pro hac vice* to be filed)
hzhong@irell.com
Michael Tezyan (*pro hac vice* to be filed)
mtezyan@irell.com
**IRELL & MANELLA LLP**
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel. (310) 277-1010
Fax (310) 203-7199

Rebecca Carson (*pro hac vice* to be filed)
rcarson@irell.com
**IRELL & MANELLA LLP**
840 Newport Center Drive, Suite 400
Newport Beach, CA 92660
Tel. (949) 760-0991
Fax (949) 760-5200

***Attorneys for Plaintiff Pictiva Displays
International Ltd. and Key Patent Innovations
Limited***